## DANDELET *v.* SMITH.

1. Under the twentieth section of the Internal Revenue Act of June 30th, 1864, as amended by the ninth section of the act of July 13th, 1866, it is not necessary that an assessor, in making a reassessment for deficiencies, should make his reassessment coincide, month by month, in the terms which it covers, with the monthly returns of the manufacturer; that is to say, it is not requisite that he should make a separate specification of deficiency for each defective return.

2. Nor, under the terms of the act of 1866, when the reassessment was made within fifteen months from the passage of the act, was it necessary that the reassessment should have reference only to returns made within fifteen months prior to the reassessment.

3. Nor, under the act of March 2, 1867, conceding that since the act of 1866 brewers are taxable, in the first instance, by stamps per barrel, and not on monthly returns, would a reassessment for deficiency be void, even though it had been made out on the principle of an assessment for false returns, under the previous act of July 13th, 1866.

ERROR to the Circuit Court for the District of Maryland; the case being thus:

. By different Internal Revenue Acts a tax was laid on brewers, by which they were made liable thus:

From September, 1862, to March 1st, 1863,　.　.　. $1 00 per bbl.*
From March 1st, 1863, to March 31st, 1864,　.　.　. 60 per bbl.†
From April 1st, 1864, .　.　.　.　.　.　.　. 1 00 per bbl.‡

And after the 30th of June, 1864, a penalty of 50 cents was added where the return was erroneous because of refusal or neglect.

By the Internal Revenue Act of June 30th, 1864§ (section 20), the assessors were to make out lists containing the names of persons residing in their respective districts, and having property liable to tax, together with the sums payable by each, which lists the assessors were to send to the collectors.

The Internal Revenue Act of July 13th, 1866,‖ enacted further (by its ninth section):

"The assessor may, from time to time, or at any time *within fifteen months from the time of the passage of this act,* or from the time of the *delivery of the list to the collector* as aforesaid, enter on any monthly or special list, . . . the names of the persons or parties, in respect to whose returns as aforesaid there has been or shall be any omission, undervaluation, understatement, or false or fraudulent statement, together with the amounts for which such persons or parties may be liable, over and above the amount for which they may have been, or shall be, assessed upon *any return, or returns* made as aforesaid, and shall certify or return said list to the collector as required by law."

This same act¶ of 1866 changed the mode of assessing and collecting the tax on malt liquors, and made the tax on them after the 1st of September, 1866, payable by stamps. And an act of March, 1867, by its fifth section** enacted:

"That if the manufacturer of any article upon which a tax is required to be paid by means of a stamp, shall have sold or removed for sale any such articles, without the use of the proper

---

* 12 Stat. at Large, 450.　　† Ib. 723.　　‡ 14 Id. 164.
§ 13 Stat. at Large, 229.　　‖ 14 Id. 104.　　¶ Sections 52–58.
** 14 Stat. at Large, 472.

stamp, in addition to the penalties now imposed . . . it shall be the duty of the assessor . . . upon such information as he can obtain, to estimate the amount of the tax which has been omitted to be paid, and to make an assessment therefor, and certify the same to the collector; and the subsequent proceedings for collection shall be in all respects like those for the collection of taxes upon manufactures and productions."

In this state of the law Dandelet, a brewer, in Baltimore, from the year 1862 had made monthly statements or returns to the assessor of what beer he admitted that he made, and these were delivered to the collector. In August, 1867, the assessor made an assessment for alleged deficiencies, the same being in the following form:

### F. Dandelet's Assessment.

| | |
|---|---:|
| Deficiency from Sept. 1, '62, to Feb. 28, '63, 522 bbls. @ $1,  : | $522 00 |
| Deficiency from March. 1, '63, to March 31, '64, 922 bbls. @ 60 c., | 555 00 |
| Deficiency from April 1, '64, to June 30, '64, 216 bbls. @ $1,  . | 216 00 |
| Deficiency from July 1, '64, to April 20, '67, 1425 bbls. @ $1,  . | 1425 00 |
| Fifty cents penalty on $1425,  .  .  .  .  .  .  . | 712 50 |
| | $3430 50 |

This assessment was entered on the monthly list for August, 1867, delivered to one Smith as collector, and after the remission of the penalty of $712.50, the balance was paid under protest. An appeal was duly made by Dandelet to the Commissioner of Internal Revenue, and was dismissed, after which this suit was brought to recover back the tax paid; and being tried by the court, judgment was given for the defendant. That judgment it was which was now brought here for review.

*Messrs. G. C. Maunde and J. C. King, for the plaintiff in error:*

*First.* The assessment is void upon its face. Even if the assessor had authority to reassess for the whole term intervening between September, 1862, and April 20th, 1867, he had no right to divide the term arbitrarily, as he has done. He should have reassessed month by month, indicating the

deficiency for each month, so as to make his reassessment coincide in time with the monthly returns of the brewer. The ninth section of the act of July 13th, 1866, was obviously designed to give to the brewer the privilege of knowing which one of his monthly returns was asserted by the assessor to be deficient, and the amount of the deficiency. The accusation of the assessor would then be so specific as to admit of a defence; but how can the brewer defend himself against a reassessment so arbitrary and sweeping in point of time as the one made in this case?

*Second.* If the section referred to embraces brewers then the reassessment is void, because it disregarded the fifteen months limitation clause contained therein. Instead of confining himself, as he was bound by the law to do, to fifteen months, the assessor in this case covered by his reassessment a term of nearly five years.

*Third.* But the section does not refer at all to the tax assessed upon brewers. This section only contemplates those persons whose duty it was, under the law, to make returns of what they made. But after September 1st, 1866, brewers were to pay by stamps, and as during that term Dandelet made no returns, and was not required by law to make them, but paid his tax by stamps, this reassessment was unauthorized.

*Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The question in this case is whether the assessment for alleged deficiencies was or was not illegal.

1. It is contended by the plaintiff in error that the assessment is void upon its face, because not made month by month so as to indicate the deficiency for each month, and to make the reassessment coincide in time with the monthly returns of the plaintiff. It is sufficient to say that the law*

---

* Section 20, as amended by act of July 13th, 1866, 14 Stat. at Large, 104.

does not require this to be done. All that the statute requires is a list of the names of parties whose returns have been deficient, with the amounts for which they are liable over and above the amount for which they may have been assessed upon any *return or returns.* This language does not, by its terms, require a separate specification of deficiency for each defective return. "The amount for which a person has been assessed upon any return *or returns*," may be an aggregate of many sums; and it is the deficiency of this amount which is to be reassessed. It may frequently happen that the assessor could not possibly tell in what particular month the deficiencies occurred, and yet he may have demonstrative evidence of the deficiency of the aggregate amount returned.

2. It is contended that, by the act, the assessor could only go back fifteen months. We do not so understand it. The language is: "The said assessor may, from time to time, or at any time within fifteen months from the time of the passage of this act, or from the time of the delivery of the list to the collector as aforesaid, enter in any monthly or special list the names," &c. The first limitation, "within fifteen months from the time of the passage of this act," evidently relates to past deficiencies; the others to future. The reassessment in this case was made within fifteen months after the passage of the act, and the assessor was justified in reviewing the past returns as he did.

3. It is lastly objected, that the law in question, namely, the twentieth section of the Internal Revenue Act of June 30th, 1864, as amended by the ninth section of the act of July 13th, 1866, does not refer at all to the tax assessed upon brewers, inasmuch as they were required, by the same act of 1866, to use stamps, instead of making monthly returns, from and after the 1st of September, 1866; whereas, the amended twentieth section authorizing a reassessment, only applied, by its terms, to defective "returns." The language refers to past as well as future returns; and, therefore, expressly covers all returns made prior to September 1st, 1866. The reassessment in this case is for deficiency

from September 1st, 1862, to April 20th, 1867, namely: prior to March 1st, 1863, 522 barrels; thence to April 1st, 1864, 922 barrels; thence to July 1st, 1864, 216 barrels; thence to April 20th, 1867, 1425 barrels. It is only the last period which embraces a portion of time in which stamps were used. But it embraced twenty-six months during which assessments were made upon monthly returns, and *non constat*, but that the deficiency of 1425 barrels arose in that time. The reassessment does not show that any portion of that deficiency arose after September 1st, 1866.

But suppose that a portion of it did arise after that time, when stamps were required to be used. The brewer may have made more beer than he stamped, and by the fifth section of the act of March 2d, 1867,* it is enacted that "if the manufacturer of any article upon which a tax is required to be paid by means of a stamp, shall have sold or removed for sale any such articles, without the use of the proper stamp, in addition to the penalties . . . imposed, . . . it shall be the duty of the assessor, . . . upon such information as he can obtain, to estimate the amount of the tax which has been omitted to be paid, and to make an assessment therefor, and certify the same to the collector; and the subsequent proceedings for collection shall be in all respects like those for the collection of taxes upon manufactures and productions."

Now, in what more proper form could the assessor make a certificate of "the amount of the tax which has been omitted to be paid," than he did in this case? If a more proper form could be devised, still is not the form used by the assessor in this case admissible?

The exact truth always lies in the knowledge of the manufacturer. His books show, or ought to show, everything that he has produced, and in an investigation of this kind, if he shows that his returns or stamps fully equal the amount of his production and sale, the burden will then be on the government to show a deficiency. The form of the assess-

---

* 14 Stat. at Large, 742.

ment adopted in this case can neither mislead nor embarrass an honest manufacturer who has kept true and exact books of account.

JUDGMENT AFFIRMED.