## BERGDOLL *v.* POLLOCK.

1. A manufacturer of fermented liquors, from whom taxes had been collected under a second assessment, was, in order to recover them, required by the act of July 13, 1866 (14 Stat. 111, Rev. Stat., sect. 3225), to show that his return did not contain any understatements; and he should, therefore, prove that it agreed with the quantity of liquor actually drawn from the fermenting vessels.

2. For that purpose, although not, under all circumstances, necessarily conclusive for or against the government, his books, if kept as the law requires, ought to be the best evidence; and, until it is shown that they cannot be produced, or do not contain the desired information, resort cannot be had to the recollection or knowledge of witnesses as to circumstances bearing upon the ultimate fact in issue.

3. *Quære,* Does the act entitled "An Act to define the tax on fermented or malt liquors," approved May 13, 1876 (19 Stat. 53), change any rule of evidence theretofore established.

ERROR to the Circuit Court of the United States for the Eastern District of Pennsylvania.

On the 22d of January, 1874, the Commissioner of Internal Revenue, acting under the authority of sect. 2 of "An Act for the reduction of officers and expenses of the internal revenue," approved Dec. 24, 1872, 17 Stat. 402, Rev. Stat. 3182, assessed a tax of $1,350 on Bergdoll & Psotta, the plaintiffs, for "one thousand three hundred and fifty barrels of beer sold and removed, &c., without proper stamps, to Oct. 1, 1873." This assessment having been duly certified to the collector, the tax was paid upon compulsion and under protest. An appeal was then made to the commissioner, under the act of 1864, sect. 44, 13 Stat. 239, as amended in 1866, 14 Stat. 111, Rev. Stat., sect. 3226, to refund the amount paid, which being denied, this action was brought against Pollock, the collector, to recover back the money.

Upon the trial, the plaintiffs offered to prove by witnesses on the stand that, from the date at which the internal revenue act of 1866 went into effect, until the assessment complained of was made, "no beer was sold or removed from their brewery for consumption or sale except in barrels or parts of barrels, which were all duly stamped with an internal revenue stamp, . . . as required by the act of Congress;" that they "had made their monthly returns to the collector regularly until and

including the month of December, 1873; that there was no understatement or undervaluation in either of said returns of the quantity of beer brewed, or of beer sold or removed from their brewery for consumption or sale, and that neither of the returns was false or fraudulent." This testimony was excluded by the court, and exceptions taken. Judgment having been rendered against the plaintiffs, they sued out this writ of error.

The errors relied upon are: 1. That the assessment is insufficient in law, because too indefinite and uncertain; and, 2. That the testimony offered was improperly rejected.

*Mr. William S. Price* for the plaintiffs in error.
*Mr. Assistant Attorney-General Smith,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The record presents only the exceptions to the exclusion of the testimony. The objection that the assessment is insufficient in law, because too indefinite and uncertain, cannot be con-sidered here, as it does not appear to have been taken below.

The acts under which the tax was assessed — 17 Stat. 402, sect. 2; 14 Stat. 104, sect. 9, amending sect. 20 of act of 1864; Rev. Stat., sect. 3182 — make it the duty of the Commissioner of Internal Revenue, in any case where upon inquiry it shall be ascertained that any list which has been delivered to a collector is imperfect or incomplete, in consequence of any omission or understatement or undervaluation or false or fraudulent statement contained in any return or returns made by any persons or parties liable to tax, to enter upon any monthly or special list, at any time withi fifteen months after the delivery of such incomplete list, the names of the persons or parties in respect to whose returns there have been any omission, &c., together with the amounts for which such persons or parties may be liable over and above the amount assessed upon the return, and to certify the list to the collector, to be proceeded with according to law. By sect. 44 of the act of 1864, 13 Stat. 239, as amended in 1866, 14 Stat. 111, Rev. Stat., sect. 3225, it is provided that, where a second assessment has been made pursuant to this authority, such assessment shall not be remitted, nor shall taxes collected under such assessment be recovered, refunded, or paid

back, unless it is proved that the list, statement, or return was not false or fraudulent, and did not contain any understatement or undervaluation.   This is a case of second assessment, and the question presented is as to the manner in which a manufacturer of fermented liquors may be permitted to prove that his returns did not contain an understatement.

The " Act to reduce duties on imports and to reduce internal taxes, and for other purposes," passed June 6, 1872, 17 Stat. 245, as amended Dec. 24, 1872, 17 Stat. 401, sect. 1, provides in sect. 19, Rev. Stat., sect. 3337, that every manufacturer of fermented liquors shall from day to day enter or cause to be entered, in a book to be kept by him for that purpose, the esti-mated quantity produced, in barrels, and the actual quantity sold or removed for consumption or sale, in barrels, or fractional parts of barrels; and shall also from day to day enter or cause to be entered, in a separate book to be kept by him for that purpose an account of all materials by him purchased for the purpose, of producing such fermented liquors, including grain and malt, and render to the collector of internal revenue for the district, on or before the tenth day of each month, a true statement, in writing, taken from his books, of the estimated quantity, in barrels, of such liquors brewed and the actual quan-tity sold; and verify or cause to be verified such statement and the facts therein set forth, by oath or affirmation.   These books are to be open at all times for the inspection of the collector, deputy-collector, inspector, or revenue agent, who may take memorandums and transcripts therefrom.   Sect. 20 requires the verification of the entries made upon these books by the oaths of the party making them and of the manufacturer, on or before the 10th of each month.

The taxes are to be paid by stamps purchased from the col-lector of the district and affixed to the packages.   Sect. 23. In this way, by a comparison of the returns with the account for stamps sold, a collector can always tell whether the taxes upon the reported production have been paid, and, by a com-parison of the estimated production with the actual production as returned and with the quantity of material purchased, he can judge as to the probable honesty of the returns.   The entries in the books are intended to be for the mutual protec-

tion of the government and the manufacturer. As was said in *Dandelet* v. *Smith*, 18 Wall. 647, " The exact truth always lies in the knowledge of the manufacturer. His books show, or ought to show, every thing that he has produced; and, in an investigation of this kind, if he shows that his returns or stamps fully equal the amount of his production, the burden will then be on the government to show a deficiency." An honest manufacturer who has kept accurate books has always at hand the ready means of establishing the fact of his compliance with the law.

His return is to be "a true statement, in writing, taken from his books." To prove, therefore, the accuracy of his returns, he has but to refer to his books. Parol testimony is only required for the identification of the books. That being done, the books and the returns speak for themselves. Nothing more is required, except to institute the necessary comparison. So, too, of the payment of the tax. The law specifies the amount of the tax upon each package, and the books show, or ought to show, the number of packages. The books also show, or ought to show, the quantity of material purchased for use. Experience has demonstrated what the ordinary production from a given quantity of material is. If the production as shown by the books differed from that which ordinarily would be the yield of the material purchased, the burden, as the law then stood, was cast upon the manufacturer after a reassessment to account for the discrepancy. It is unnecessary now to decide whether this rule of evidence has been changed by the " Act to define the tax on fermented or malt liquors," passed May 13, 1876. 19 Stat. 53. The proper mode of overcoming this burden is not by showing that no packages have been removed without the requisite stamp, but by proof of what was actually drawn from the fermenting vessels. The reasonable presumption is that the production of one brewer will not vary materially from the average of production of others operating under similar circumstances and manufacturing a similar article. If it does, an experienced manufacturer ought to be able to account for the difference. For this purpose, his books, which the law makes it his duty to keep, will, if kept as the law requires, furnish the evidence of his daily transactions, and enable him at once, when a deficiency appears,

to secure the evidence with which to make the necessary explanation, should one be called for. If he produces a better article by the use of a larger quantity of material, or has sustained special losses in the process of manufacture, or afterwards and before removal, or has sold a part of his material without use, by having his attention called through his daily entries to an apparent deficiency in his production, he can prepare himself for defence against any charge which may grow out of it. His books are not necessarily conclusive for or against the government under all circumstances; but if properly kept, as they must be to avoid the penalties of the law, they ought, so to speak, to furnish the base from which his evidence must spring. If they do not, it is his own fault, and he must suffer the consequences. Certainly, the law does not contemplate that he may relieve himself from the effect of insufficient or improper entries by a resort primarily to the uncertain recollection or knowledge of witnesses as to circumstances which in any event can have only a remote bearing upon the ultimate fact to be established. We do not say that, in the progress of a trial and under some circumstances, such proof as was offered as to removals may not be competent; but we are clearly of the opinion that no foundation was laid in this case for its introduction. The books, with proper explanations in respect to entries which appear in them, ought to constitute the best evidence in the case; and, until it is shown that they cannot be produced, or that they do not contain the information required, no evidence of such remote circumstances is admissible. In this case, there was no attempt to account for the absence of the books, or any claim of defective entries, and we think the court did not err in excluding the testimony.

The other questions presented in the brief filed for the government were not raised in the court below, and need not be considered here.                *Judgment affirmed.*