Campbell, Chief Justice,
delivered the opinion of the court:
By this suit the plaintiff, a corporation engaged in the manufacture of cotton goods, seeks to recover certain income, war tax, and excess-profits taxes for the year 1917. It is not a suit to recover an excess in amount of taxes exacted over the amount that was properly due and payable under the taxing statutes. But treating the limitation of five years, under section 250 (d), act of 1921, as extinguishing *367 its liability or obligation for any additional taxes, the plaintiff seeks to recover these additional taxes which were assessed and collected more than five years after the date of its returns. There is a stipulation between the parties as to certain facts, to be mentioned, and there is no proof of any other facts.
The suit was brought in this court October 4, 1924. The petition avers that plaintiff filed its income and excess-profits tax returns for the taxable year 1917 on or before April .1, 1918, and did not file any amended return; that in making up its return its income for January, February, and March, 1917, was estimated and that this estimate was “ necessarily inaccurate ” because its books had not been closed, nor an inventory taken on December 31, 1916. It points out that the commissioner’s method of determining the net income was different from that adopted by itself, and states that more than five years after its returns had been filed the Commissioner of Internal Revenue determined and assessed against it additional income and excess-profits taxes for the year 1917, and that upon notice and demand upon it by the collector the plaintiff paid these additional taxes under protest on November 8, 1923. It is alleged that the commissioner determined and assessed against it “ grossly excessive additional income and excess-profits taxes, * * * on the basis of an arbitrary, inaccurate, and unlawful estimate of a supposed net income,” and it is further averred that plaintiff filed two claims for refund of these additional taxes, which it had paid, claiming in one of them that the commissioner had adopted an erroneous method for determining the net income, and in the other it claimed the refund because the assessment and collection of the additional taxes had been made more than five years after its return of April 1, 1918, and were barred by the statute of limitations established by section 250 (d) of the revenue act of 1921, and that plaintiff “ did not consent in writing to a later determination, assessment, or collection ” of the additional taxes. Both of these claims for refund were disallowed by the commissioner, one in February, 1924, and the other in September, 1924.
*368 Looking to the evidence, we find that the parties have stipulated that a certain statement of facts is true and “ may be included in the findings of fact” by the court. These agreed facts show that plaintiff made its tax returns for the taxable year 1917 on or before April 1, 1918, and made no amended returns thereof; that on or about October 27, 1923, more than five years after the returns were made by the plaintiff, the commissioner assessed against it for 1917 additional income and excess-profits taxes in the amount sued for, and shortly thereafter the collector gave notice to and made demand upon the plaintiff for the payment of these additional taxes, and they were thereupon paid by it to the collector under protest on November 8, 1923. The stipulation sets forth an instrument, called waiver, executed by plaintiff under its corporate seal, bearing date February 10, 1921, whereby in consideration of certain assurances it waived any and all statutory limitations as to the time within which assessments against it could be made for taxes imposed by the act of September 8, 1916, as amended by the act of October 3, 1917. A photostat copy of this waiver is attached to the stipulation and shows it was received in the bureau on February 14, 1921. Below the signature of plaintiff is a stamped notation, “Approved February 7, 1923,” followed by the name and official designation of the Commissioner of Internal Revenue. The stipulation proceeds to state that in March, 1924, plaintiff filed its application for a refund “ on the ground, among others,” that the assessment and the collection of the additional taxes had been made after five years, as above stated, and the application stating that the assessment and collection were barred by the statute of limitations contained in section 250 (d) of the revenue act of 1921, and that it had not consented in writing to a later determination, assessment, or collection. This claim for a refund was rejected. The items making-up the commissioner’s additional assessment are set forth. This stipulation contains all the evidence presented in the case. Relying solely upon the facts thus stated, the plaintiff’s contention is that it is entitled to recover because the commissioner’s assessment and the collection of the addi *369 tional taxes were more than five years subsequent to its own returns of April 1, 1918. See 42 Stat. 264, 265.
Notwithstanding the averments of the petition, the stipulated facts have no reference to the correctness of the commissioner’s determination of the amount of taxes that plaintiff owed. There is nothing to question the accuracy of his decision if it had been made earlier than it was made. For aught that appears to the contrary, plaintiff owed the additional taxes, which were collected, though paid under protest, up to the time of the expiration of the five-year limit, upon which it now relies. The petition does aver that the commissioner assessed against plaintiff grossly excessive additional income and excess-profits taxes on the basis of an arbitrary estimate; but there is no proof of this allegation or of the basis upon which he did proceed. It is a fair deduction that this feature is abandoned. The petition admits that the plaintiff’s return filed April 1, 1918, was necessarily inaccurate.
The act of 1921 provides: “ Sec. 250 (d). The amount of income, excess-profits, or war-profits taxes due under any return made under this act * * * for prior taxable years or under prior income, excess-profits, or war-profits tax acts * * * shall be determined and assessed within five years after the return was filed, unless both the commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax and no suit or proceeding for the collection of any such taxes due under this act or under prior income, excess-profits, or war-profits tax acts * * * shall be begun after the expiration of five years after the date when such return was filed. * * * Provided further, That in the case of a false or fraudulent return with intent to evade tax or of a failure to file a required return the amount of tax due may be determined, assessed, and collected and a suit or proceeding for the collection of such amount may be begun at any time after it becomes due.” (42 Stat. 264.) <
It is manifest that this act does not prescribe a limitation of five years in every case. The limitation is not effective where there has been a “ consent ” to a later determination, *370 assessment, and collection or where there has been a false or fraudulent return. Apparently recognizing this condition, the petition avers that the commissioner and the plaintiff did not consent in writing to a later determination, assessment, and collection of the tax. The stipulated facts show that plaintiff executed a waiver of all statutory limitations as to the time within which assessments based upon its liability under certain acts could be made. The act of 1916, 39 Stat. 772, provided for assessments by the commissioner in case of erroneous, false, or fraudulent return within three years after the return is due, and three years lacking a few weeks had expired after its returns of April 1, 1918, when this waiver was executed in February, 1921. The plaintiff concedes that this waiver effectually extended the time for an additional assessment beyond the three-year limit, saying, “ The waiver remained in full force and effect until it was superseded by the act of November 23, 1921.” We think that the plaintiff could waive a right given by the statute. See Shutte v. Thompson, 15 Wall. 151, 159, and that it did so when it executed the waiver. But it does not follow that the waiver, standing alone, should be given the effect of waiving the provisions of a subsequent statute. The general rule is that a waiver extends to rights existing when it is made. See Pence v. Langdon, 99 U.S. 578, 581; Bennecke v. Insurance Co., 105 U.S. 355, 359. In this view a consent authorized by the act of 1921 is one given after its enactment. There is no evidence showing the circumstances surrounding the commissioner’s notation upon the waiver which the plaintiff had signed long before the date of this notation. The petition avers that the plaintiff did not consent to a later determination of the tax, and in its application for a refund plaintiff stated that it had not consented, but this statement is not shown to be true, and the allegation of the petition is unsupported unless it is to be presumed that the commissioner’s action was entirely unauthorized. But the-presumption, if one is to be indulged, is the other way. Both parties could have treated plaintiff’s waiver as a continuing one, and plaintiff having signed it, the commissioner’s approval and signature would show a sufficient consent in writing under section 250 (d). This *371 section provides that where a deficiency in tax is discovered upon examination of a return the taxpayer shall be notified and given 30 days to show cause why the tax should not be paid and that “ opportunity for hearing shall be granted.” It is a circumstance bearing upon the question of consent that the plaintiff did not question, so far as the facts disclose, the commissioner’s right to proceed with the assessment as upon a consent in writing by both parties. The statement in its application for a refund that it had not consented was much later and apparently was not made until after its first application for a refund had been rejected. We think it a material part of plaintiff’s case that it prove that the exceptions stated in the act do not apply to its claim. It is essential that it show that it has a valid claim against the United States. In Bergdoll v. Pollock, 95 U.S. 337, the court held that in order to collect taxes paid under a second assessment the taxpayer was required by the act (section 3225, Rev. Stat.) to show that his return did not contain any “understatements.” This section (3225), for many years a part of the statutory system for a recovery of taxes, was amended by the revenue act of 1918, 40 Stab. 1145, and reenacted in the revenue act of 1921, 42 Stat. 316, upon which act this suit is predicated. It was, however, repealed by the revenue act of 1924, 43 Stat. 343, with a provision for the reopening and decision of claims that had been denied because of its provisions. But section 250 (d), above quoted, has a proviso taking out of the limitation it prescribes all cases of false or fraudulent returns, and the principle is applicable that was announced in Bergdoll v. Pollock, supra, to the effect that plaintiff should show affirmatively that its case is not within the excepted class.
The suit being one against the United States, is maintainable only in accordance with the conditions which the Government has prescribed in consenting to be sued. “ If it attaches even purely formal conditions to its consent to be sued, these conditions must be complied with.” Rock Island, etc., R. R. v. United States, 254 U.S. 141, 143. The stipulated facts leave too much to implication. The plaintiff can not recover without showing a valid claim against the United States.
*372 There is another view for consideration. The plaintiff’s contention that the act furnishes a right to recover all taxes collected after the expiration of five years from the date of the taxpayer’s return presents a theory that manifestly can not be sustained unless it be held that the limitation prescribed by the act of 1921 operated not alone upon the remedy but also upon the right of the Government to collect and hold additional taxes after the end of the statutory limitation, even though such additional taxes were proper liabilities of plaintiff before that time. The general rule unquestionably is that the statute of limitations operates only to bar the remedy and does not extinguish the right. This is said in Brent v. Bank, 10 Peters 596, 616, to have been laid down by the court as an established principle. The plaintiff is here suing the 'United States and it is not the case of the United States suing the plaintiff for additional taxes. In the latter case, if sued, he could plead the statute or not plead it, as he might elect. It is a personal privilege. See Kendall case, 14 C. Cls. 122, 123, which distinguishes between the meaning of the statute of limitations applicable to claims against the Government asserted in this court and a general statute of limitations applicable to individuals. See Kendall ease, 107 U.S. 123. The distinction is made plain in Finn’s case, 123 U.S. 227, where the statute of limitations is held to be jurisdictional in the Court of Claims. It is there said (p. 232) that the general rule that limitation does not operate as a bar, but is a defense which may be pleaded or waived, has no application to suits in the Court of Claims against the United States. See also Campbell v. Holt, 115 U.S. 620, 625. Nor is the statute such an one as was considered in Phillips v. Grand Trunk Ry., 236 U.S. 662, 667, and Kansas City Southern Ry. v. Wolf, 261 U.S. 133, 139. The exceptions which it provides preclude the idea that it was intended to bar all right of the Government and absolutely wipe out the taxpayer’s liability for taxes which had not been properly returned by him. If all obligation for the taxes was extinguished at the end of the five-year period, it would seem that the Government could never set up this tax liability, as a counterclaim under the broad terms of the *373 second paragraph of section 145 of the Judicial Code. By an act to amend the revenue act of 1921, enacted in 1923, 42 Stat. 1504, provision is made for suits by the taxpayers to recover taxes they may have paid in excess of the amounts properly due under the taxing acts. The course open to a taxpayer where taxes are illegally exacted is to pay them and sue for their recovery. See Graham v. Dupont, 262 U.S. 234. But it is to be observed that the Government is not under obligation to provide a remedy through the courts. See Babcock case, 250 U.S. 328, 331. There is no implied promise on the part of the United States to repay to a taxpayer an amount of taxes which he was liable for, and the burden is on him to show that the Government ex aequo et bono is bound to refund the amount which he paid. See Bailey v. Railroad Company, 22 Wall. 604, 638; Page v. Skinner, 298 Fed. 731, 736. See also the case of United States v. Chamberlin, 219 U.S. 250, 260.
The petition should be dismissed. And it is so ordered.
Graham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.