**HARVEY v. EARLY et al.**

No. 6205.

United States Court of Appeals
Fourth Circuit.

Argued March 14, 1951.

Decided May 11, 1951.

L. Grafton Tucker, Lovingston, Va., for appellant.

Richard D. Harrison, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., Howard C. Gilmer, Jr., U. S. Atty. and R. Roy Rush, Asst. U. S. Atty., Roanoke, Va., on brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge.

This is an action by a taxpayer against the personal representatives of the Collector of Internal Revenue for the State of Virginia to recover the sum of $8,169.22 assessed against him as a deficiency income tax, plus 50% fraud penalty and interest for the years 1941, 1942 and 1943. The amount was collected in part by distraint, and by payment under protest on August 21, 1946 of $1,342.39, the remainder thereof. After hearing the evidence the District Court dismissed the complaint, and this appeal followed. The taxpayer contends that the assessment was arbitrary in that there were no facts upon which to base the assessment.

At the trial the taxpayer admitted that such records which he originally had were inadequate and incomplete and did not reflect a true and complete account of his merchandise business. He testified that such records as he originally had were destroyed by fire. There was no attempt made by him to record either purchases, sales, receipts or disbursements in such a manner that the income of the business could be determined. It was, therefore, necessary for the Commissioner to reconstruct a set of books for the taxpayer, and to adopt the best procedure available to determine gross income.

The taxpayer operated a general merchandise store and filling station. The method used to determine gross income was to show a 30% sales mark-up over cost on everything except gasoline. The evidence showed that this adjustment was in line with general experience of similar business in that locality, and taxpayer does not complain of the amount, or method of arriving at his profit from the sale of merchandise. His appeal relates to the method of computing gross income from sale of gasoline.

The investigation showed that sales of gasoline by taxpayer had increased approximately 10,000 gallons in 1942 over 1941, and that sales in 1943 were more than double the volume sold in 1941. Other operators of filling stations had no increase in sales of gasoline for the years 1942 and 1943 because gasoline was then rationed. Taxpayer's permit for the sale of gasoline was suspended for a period of thirty days during the year 1943. He was indicted and convicted in the District Court upon three charges for violation of Ration Order No. 8 promulgated pursuant to the Second War Powers Act, 1942, 50 U.S.C.A.Appendix, § 631 et seq., two offenses being for possession of counterfeit sugar ration coupons in March, 1944, and the other offense being

the possession in April, 1944, of gasoline ration coupons prior to the validity date thereof. He was also indicted for the sale of 2,809 gallons of molasses over a period from May 23, 1943 to March 27, 1945, in violation of Section 2811 of the Internal Revenue Code, 26 U.S.C.A. § 2811, and Treasury Regulations 17 issued by the Commissioner of Internal Revenue. He plead guilty to these violations and was sentenced. He also admitted that during the years in question he bought and sold a number of automobiles and that he never reported any profit from such sales. The District Court made the following significant finding of fact:

"An analysis of the taxpayer's tax returns showing the merchandise and gasoline purchases and the gross sales for the three years as compared with the merchandise purchases actually ascertained by agents of the Bureau of Internal Revenue disclose a wide variance. * * *

"Taxpayer offered no evidence to refute the figures of gross purchases as found by the agents of the Bureau of Internal Revenue. The difference in the gross purchases as reported by the taxpayer and as found by the agents indicates that the taxpayer failed to report purchases of gasoline made by him. This conclusion is reached by the fact that the difference in the figures of the taxpayer and the agents approximates the cost of gasoline for the years in question."

■ Under these circumstances the Commissioner of Internal Revenue, in attempting to reconstruct taxpayer's income from the sale of gasoline, determined that the excess gallonage of gasoline purchased in 1942 and 1943 over the amount purchased in 1941 was sold at the prevailing black market price of 35 cents per gallon, instead of the regular rate of 23 cents per gallon. We think the facts clearly justified that determination by the Commissioner. It is also significant that for the three years in question the taxpayer's original tax returns reported a total income of only $3,-704.51, whereas his net worth increased much more than that amount in the same years, as was clearly pointed out in the opinion of the District Judge.

■ The Commissioner's assessment is presumably correct, and the burden of proof is upon the taxpayer to prove it erroneous, and to establish all facts from which a correct determination can be made. Reinecke v. Spalding, 280 U.S. 227, 232, 233, 50 S.Ct. 96, 74 L.Ed. 385; Parkersburg Iron & Steel Co. v. Burnet, 4 Cir., 48 F.2d 163, 164; American Land & Investment Co. v. Commissioner, 4 Cir., 40 F.2d 336; Lightsey v. Commissioner, 4 Cir., 63 F.2d 254, 255. The taxpayer must prove the amount of his income by his books and records. Bergdoll v. Pollock, 95 U.S. 337, 24 L.Ed. 512; Burka v. Commissioner, 4 Cir., 179 F.2d 483. Taxpayer offered no evidence to refute the Commissioner's determination of gross sales from gasoline, except unsupported denials of black market activities. There is ample evidence to support the finding of the District Court that the taxpayer deliberately and intentionally concealed and failed to report a large part of his income and that the Commissioner was justified in assessing the 50 per cent fraud penalty.

Taxpayer made certain claims for deductions, but in each case he wholly failed to sustain his burden of proving such expenditures.

Counsel for both plaintiff and defendants now admit that the Collector of Internal Revenue made certain errors in calculating the deficiency assessment of $8,-169.22 assessed against the taxpayer. These errors were against the taxpayer and reveal that he has overpaid his tax, penalty and interest in the amount of $722.20. Three computation errors appear in the record as follows:

1. In computing gross income from the sale of gasoline in the years 1942 and 1943 a rate of 23 cents per gallon was used for the number of gallons equal to the gallons sold during the year 1941. All excess sold in 1942 and 1943 was computed at the prevailing black market price of 35 cents per gallon. The revenue agent testified that in his computation he used as a basis for 1941, a total gallonage figure of 30,195 gallons. However, it was stipulated in the record that the quantity purchased in 1941 totaled 31,795 gallons, a difference of 1,600

gallons. The income from this 1,600 additional gallons was computed on the basis of 35 cents per gallon rather than 23 cents per gallon, resulting in an error in gross income for the years 1942 and 1943.

2. The second error was simply an arithmetical error in calculating the cost of gasoline purchased in 1943. In multiplying the number of gallons of gas purchased (64,286) by the agreed cost price per gallon (18 cents) the taxpayer was allowed a cost price of only $10,685.50 instead of $11,571.48, the correct figure.

3. The third error concerned the total number of gallons of gasoline purchased in 1943. Hudson, the revenue agent, testified that to his knowledge taxpayer had not purchased gasoline from sources other than American Oil Company and Republic Oil Company. The taxpayer testified to the same effect. The revenue agent testified that in computing gross income from the sale of gasoline for 1943 he had used the total of 64,286 gallons, whereas the records of the gasoline companies and the statements of these two companies which are included in the record showed that only 61,536 gallons had been purchased.

When all of these errors are corrected, there is a net increase in income tax for the year 1941 of $28.33 and an increase in penalty of $14.16. This results from computing income from the sale of gasoline during that year at the correct figure of 31,795 gallons instead of 30,195 gallons. Since this additional tax and penalty for 1941 was not included in the assessment made by the Commissioner of Internal Revenue, and is not involved in this suit, it cannot now be claimed as a offset to the credits that should properly be given to the taxpayer for the subsequent years of 1942 and 1943. Therefore, the original figure for 1941 must stand.

These errors resulted in an overassessment in 1942 of $38.60 in income tax, $19.80 in penalty and $4.63 in interest. For the year 1943 there was an overassessment of $407.11 in income tax, $229.89 in penalty and $22.17 in interest. There was an overassessment for both years 1942 and 1943 of $445.71 in income tax, $249.69 in penalty and $26.80 in interest, or a total of $722.20, which amount plaintiff is entitled to recover from the defendants. These errors in calculating the overassessment appear in the record, and were called to our attention in the argument of this case by counsel for the plaintiff, and have been agreed to by counsel for the defendants.

The action of the District Court upon all questions presented to him for decision is affirmed. Because of the error made by the Government in calculating the overassessment, the decree entered on September 20, 1950 must be set aside and the case must be remanded to the District Court with the direction to enter a decree in favor of the plaintiff for the sum of $722.20, with interest thereon from August 21, 1946, at the rate of 6% per annum until the same is paid; and that the costs on the appeal be divided.