PLATT TRAILER COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40145. Filed March 28, 1955.

*Thomas V. Happer, Esq.,* for the petitioner.
*A. Robert Doll, Esq.,* for the respondent.

OPINION.

BRUCE, *Judge:* Respondent determined deficiencies in the tax of the petitioner and an addition to tax, as follows:

| Year | Income tax deficiency | Declared value excess-profits tax deficiency | Excess profits tax deficiency | Addition to tax— sec. 291 (a) |
| --- | --- | --- | --- | --- |
| 1944 | $3,165.83 | | $2,065.56 | $516.38 |
| 1945 | 1,275.37 | $1,338.48 | 12,684.11 | |
| 1946 | 16,289.17 | | | |

The issues for decision are whether the Commissioner correctly determined that all of the accrued salaries of petitioner's vice president

in excess of $500 were not allowable deductions under section 23 (a) of the 1939 Code, that the deduction of accrued but unpaid salaries of petitioner's officers was barred by section 24 (c) of the 1939 Code, that petitioner was not entitled to deductions for additions to its bad debt reserve in 1944 and 1945, and that amounts in excess of the regular retail price paid by petitioner's customers on trailers delivered were includible in petitioner's gross income. All other adjustments by respondent were either uncontested by petitioner or the issue was settled by agreement of the parties.

The stipulated facts are so found.

Petitioner is an Indiana corporation with its principal place of business in Elkhart, Indiana. Petitioner filed its corporation income tax returns for the taxable years 1941 to 1946, inclusive, its declared value excess-profits tax returns for the taxable years 1941 to 1945, inclusive, and its excess profits tax return for the taxable year 1945 with the collector of internal revenue for the district of Indiana. Petitioner kept its books and filed its Federal tax returns on the accrual basis of accounting.

Petitioner was organized on December 15, 1938, to engage in the business of manufacturing house trailers. Prior to incorporation the business had been carried on by O. W. Platt as a sole proprietorship. O. W. Platt died intestate on December 5, 1939. On that date he held and owned 150 shares of capital stock of petitioner, which was the total outstanding stock of petitioner, with the exception of qualifying shares. Bertha S. Platt, the decedent's widow (hereinafter referred to as Bertha), and Harold D. and Eldon S. Platt, the decedent's two sons (hereinafter referred to as Harold and Eldon, respectively), each inherited 50 shares of O. W. Platt's 150 shares of capital stock of petitioner.

During each of the years 1941 to 1946, inclusive, Harold, Bertha, and Eldon constituted petitioner's board of directors and were petitioner's president, vice president, and secretary-treasurer, respectively. During those years each owned one-third of the outstanding capital stock of petitioner, and petitioner paid no dividends.

Petitioner accrued on its books and claimed as deductions on its Federal tax returns salaries for Bertha in the following amounts:

| | | | |
|---|---|---|---|
| 1941 | $6,330.00 | 1944 | $5,403.34 |
| 1942 | 5,398.00 | 1945 | 5,403.34 |
| 1943 | 5,402.00 | 1946 | 6,370.00 |

Respondent determined that all but $500 of the claimed deduction in each of the above years was excessive and was not an allowable

deduction under section 23 (a) of the 1939 Code.[1]  Petitioner contends that the amounts deducted represented "a reasonable allowance for salaries or other compensation for personal services actually rendered." What constitutes reasonable compensation to a specific officer of a corporation is a question of fact.  Respondent's determination is prima facie correct, and petitioner has the burden of proving that it is entitled to a deduction in an amount larger than that allowed. *Miller Mfg. Co.* v. *Commissioner*, (C. A. 4) 149 F. 2d 421.  In our opinion petitioner has not sustained that burden in the instant case.

Bertha, who in 1941 was 62 years of age, came to the place of business of petitioner on the average of three times a week to sign checks and, sometimes, correspondence.  She usually stayed about a half a day.  Also, her two sons discussed business policies with her in order that she would be informed of what they were doing.  There is nothing in the record to indicate that she had any special qualifications which rendered her advice valuable to petitioner; and there is no evidence as to what would be reasonable compensation for the services she performed, such as the amount paid by comparable corporations for like services.  Upon the basis of the present record we are unable to find that respondent's determination was erroneous.  This holding renders unnecessary a decision as to whether the above salary deductions were barred by section 24 (c) of the 1939 Code.

Petitioner accrued on its books and claimed as deductions on its Federal tax returns salaries for Harold and Eldon in the following amounts:

| Year | Harold | Eldon |
|------|--------|-------|
| 1942 | $7, 246. 00 | $4, 606. 00 |
| 1943 | 7, 229. 00 | 4, 619. 00 |
| 1944 | 7, 223. 33 | 4, 623. 33 |

Of the above-claimed deductions respondent disallowed, as barred by section 24 (c) of the 1939 Code,[2] the following amounts:

[1] SEC. 23.  DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

[2] SEC. 24.  ITEMS NOT DEDUCTIBLE.  [As it applied in 1942, 1943, and 1944.].
(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—
(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and
(2) If by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and
(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

| Year | Harold | Eldon |
|------|--------|-------|
| 1942 | $3,286.00 | $3,286.00 |
| 1943 | 3,314.00 | 3,314.00 |
| 1944 | 3,323.33 | 3,323.33 |

The purpose of section 24 (c) is to eliminate the former tax avoidance practice of accruing unpaid expenses and interest payable to a closely related taxpayer who, because he is on a cash basis, reports no income. Because of the relationship between the taxpayers, payment might never be required or might be postponed until the related taxpayer has offsetting losses. House Ways and Means Committee Rept. No. 1546, 75th Cong., 1st Sess. (1937), p. 29.

For a deduction to be barred by section 24 (c), all three of the conditions set forth therein must exist. *Fincher Motors, Inc.*, 43 B. T. A. 673; *Michael Flynn Manufacturing Co.*, 3 T. C. 932. Therefore, petitioner must prove that one of the three conditions was not present in order to sustain its position that the salary deductions for Harold and Eldon were allowable. The principal controversy revolves around the applicability of section 24 (c) (2). Unquestionably the related taxpayer requirement of section 24 (c) (3) was satisfied. And, petitioner has not shown that payment in excess of the amounts allowed by respondent was made during the taxable year or within 2½ months thereafter so as to render section 24 (c) (1) inapplicable. Harold did testify that notes were given for the unpaid portion of the accrued salaries during the following year. The giving of a note has been held to constitute payment. *Mid-State Products Co.*, 21 T. C. 696, 719. But there is no proof that the notes in question were given within 2½ months after the close of the taxable year in which the salaries accrued.

Section 24 (c) (2) is applicable:

(2) If by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends;

The taxable year of Harold and Eldon was the calendar year and each used the cash method of accounting. Therefore, their accrued but unpaid salaries were not includible in their gross income unless the salaries were constructively received.

The record shows that in each of the years involved the salaries in question were voted to Harold and Eldon and were accrued on the books of petitioner. Part of the accrued salary was paid to each during the taxable year, and a note for the balance was given during the following year. Petitioner had $6,578.15, $7,563,04, and $15,220.48 in cash at the close of the years 1942, 1943, and 1944, respectively. It had an unused line of unsecured credit in the amount of $15,000 with the St. Joseph Valley Bank, Elkhart, throughout those years.

Each of the corporate officers reported as income the full amount accrued on the books of petitioner.

Respondent contends that petitioner has failed to prove constructive receipt because it has not shown that in each of the taxable years the salaries were unconditionally credited to the individual accounts of or set apart for Harold and Eldon and were unqualifiedly subject to their demand, citing Regulations 111, section 29.42–2; *Hoyt B. Wooten*, 12 T. C. 659, affd. (C. A. 6) 181 F. 2d 502; *McDuff Turner*, 5 T. C. 1261; and *Van W. Peabody*, 5 T. C. 426. We find no merit in respondent's argument that the salaries were not subject to the officers' unqualified demand. They had absolute control over the payment of salaries and petitioner either had the cash or could have borrowed the cash to pay them. *Ohio Battery & Ignition Co.*, 5 T. C. 283; *Michael Flynn Manufacturing Co., supra*. Also, petitioner has sustained its burden of proving that the salaries were unconditionally credited to the officers' individual accounts. Petitioner's president testified that the salaries were voted in each of the taxable years involved and the parties stipulated that petitioner accrued the salaries for Harold and Eldon on its books as set forth above. Furthermore, these officers, who were in a better position than anyone else to determine whether the salaries were subject to their unconditional and unqualified demand, treated the accrued salaries as constructively received by reporting them as income. Hence we find that the accrued salaries were constructively received and were includible in the gross incomes of Harold and Eldon. *James J. Cooney*, 18 T. C. 883. Therefore, the deduction of the salaries as expenses was not barred by section 24 (c). *Ohio Battery & Ignition Co., supra*.

Petitioner uses the reserve method for deducting bad debts, and in each of the taxable years 1944, 1945, and 1946 petitioner added $1,800 to its bad debt reserve. Respondent, in his notice of deficiency dated January 22, 1952, determined that the $1,800 additions for each of the years 1944 and 1945 were not allowable as deductions.

A schedule of petitioner's accounts receivable, as taken from petitioner's books, is as follows:

ACCOUNTS RECEIVABLE

| December 31 | Total | Charged in | | |
| --- | --- | --- | --- | --- |
| | | December | November–September | August and prior |
| 1941 | $31, 671. 30 | $5, 401. 71 | $2, 865. 57 | $23, 404. 02 |
| 1942 | 22, 532. 31 | 10, 578. 44 | 1, 201. 25 | 10, 752. 62 |
| 1943 | 18, 576. 27 | 7, 536. 26 | 86. 60 | 10, 953. 41 |
| 1944 | 13, 897. 65 | 2, 705. 11 | 137. 03 | 11, 055. 51 |
| 1945 | 12, 404. 59 | 11, 636. 65 | 33. 49 | 734. 45 |
| 1946 | 51, 362. 11 | 50, 904. 51 | 203. 83 | 253. 77 |
| 1947 | 37, 304. 09 | 25, 914. 28 | 9, 020. 98 | 2, 368. 63 |
| 1948 | 187, 134. 17 | 29, 308. 48 | 84, 840. 14 | 72, 985. 55 |

A schedule of the charges and credits made to petitioner's bad debt reserve and the credit balance in its bad debt reserve at the close of each year, as shown by its books, is as follows:

| Year | Charges | Credits | Balance December 31 |
|---|---|---|---|
| 1941 | $483.76 | $6,896.76 | $15,747.13 |
| 1942 | 20,003.33 | 6,405.53 | 2,152.33 |
| 1943 | 0 | 1,800.00 | 3,952.33 |
| 1944 | 0 | 1,800.00 | 5,752.33 |
| 1945 | 3,533.00 | 1,800.00 | 4,019.33 |
| 1946 | 1,408.86 | 1,800.00 | 4,410.47 |
| 1947 | 8,963.75 | 8,553.28 | 4,000.00 |
| 1948 | 0 | 14,743.50 | 18,743.50 |

Section 23 (k) (1) of the 1939 Code permits the deduction of "(in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts." Congress has explicitly made the deduction contingent upon the Commissioner's discretion, and in order to prevail petitioner must prove that the disallowance of the deductions in 1944 and 1945 was an abuse of. that discretion. *Krim-Ko Corporation*, 16 T. C. 31; *Walter H. Goodrich & Co.*, 40 B. T. A. 960; *C. P. Ford & Co.*, 28 B. T. A. 156.

"A bad debt reserve is an estimate of the future losses which it is assumed will result from current business debts." *Mill Factors Corporation*, 14 T. C. 1366. Relative to determining a reasonable addition to this reserve, Regulations 111, section 29.23 (k) (5), provides:

What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve. In case subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve should be reflected in the determination of the reasonable addition necessary in the taxable year. * * *

At the close of 1944 petitioner had a reserve for bad debts of $3,952.32 prior to making any additions thereto. This constituted a reserve equal to approximately 28 per cent of outstanding accounts receivable. There is nothing in the record to indicate that this amount was not sufficient and that the Commissioner's refusal to allow an addition thereto was an abuse of his discretion. It must be remembered that the determining factor is not whether the additions to the reserve are sufficient to absorb the bad debts that might arise but whether the reserve itself is sufficient for that purpose. *Krim-Ko Corporation, supra.*

However, if the addition to the reserve account for 1944 is disallowed, the balance in that account at the end of 1945 was $419.33. While this reserve balance was approximately 3 per cent of outstanding accounts receivable, under the circumstances it was grossly inadequate to cover estimated losses. Petitioner sold its trailers to around 35 dealers, many of whom operated on a shoestring. Over the preceding 4 years petitioner had sustained losses exceeding 27 per cent of the sum of outstanding accounts receivable at the beginning of those years. This high loss percentage was sustained despite the fact that during 2 of those years most of petitioner's sales were to the Federal Government and it had no losses. During 1945, the year in question, petitioner's losses exceeded 25 per cent of its outstanding accounts receivable at the beginning of that year.

In justification of his determination, respondent points out that most of the very substantial charges to petitioner's bad debt reserve in 1942 were on the account of one dealer, that most of petitioner's sales in 1945 and 1946 were on a c. o. d. basis, and that 90 per cent of the outstanding accounts receivable at the end of 1945 were current. We do not agree with respondent's contention that it was very unusual to have a large loss on the account of one dealer where, as here, substantial sales were made to a limited number of customers. Furthermore, we fail to see how petitioner's volume of c. o. d. sales would lower its percentage of loss on its remaining accounts. And while it is true that the current condition of the outstanding accounts receivable would reduce the amount of petitioner's estimated loss, it would not be reduced to the extent respondent suggests. Moreover, while subsequent credit history cannot be considered in determining the basic fact before us, petitioner's losses in 1946 and 1947 fully substantiate the inadequacy of the reserve at the end of 1945 and the reasonableness of petitioner's $1,800 addition to the reserve in that year. Cf. *Apex Brewing Co.*, 40 B. T. A. 1110.

Respondent further contends that petitioner's failure to use a formula in computing additions to its bad debt reserve is another reason for not allowing any addition thereto. No authority is cited in support of this position, and we have found none. While a percentage formula may be accurate in estimating losses where there is a large volume of small sales, such is not the instant case. Moreover, as a percentage based upon petitioner's past experience would indicate a much larger addition to the reserve than that deducted by petitioner, respondent can hardly complain because of petitioner's failure to use such a formula. The evidence in our opinion clearly demonstrates that respondent's refusal to allow any addition to petitioner's bad debt

reserve in 1945 was an abuse of discretion and that a $1,800 addition to the reserve in that year was clearly reasonable. Cf. *H. W. Porter & Co.*, 14 T. C. 307, reversed on other grounds (C. A. 3) 187 F. 2d 939; *Southeastern Finance Co.*, 4 T. C. 1069, affd. (C. A. 5) 153 F. 2d 205; *Lutz & Schramm Co.*, 1 T. C. 682; *Apex Brewing Co.*, *supra.*

The final issue for decision is whether respondent correctly determined that petitioner's sales for 1946 should be increased in the amount of $27,494.22. This amount, made up of $26,181.48 in cash and a jeep worth $1,312.74, represented payments by six or eight of petitioner's dealers or customers in excess of the regular dealer price. During 1946 these dealers paid between $150 and $200 in excess of the regular price on each trailer delivered by petitioner. Harold, Eldon, and Bertha reported as income from the operation of a "joint venture" with certain of petitioner's dealers, $9,180.90, $9,309.25, and $7,691.33, respectively, which represented the cash received. The value of the jeep, or $1,312.74, was recorded on petitioner's books as paid-in surplus.

Petitioner contends that the payments in excess of the regular dealer price were not its income, but were the income of its officers. The record does not support this contention. Harold testified that the payments were made by dealers operating on a "shoestring" whom they helped to go into business. The inference we draw from this testimony is that these dealers were charged more than the normal price because they were poor credit risks. As petitioner, not its officers, assumed the added risks, the income belonged to petitioner. This is substantiated by the fact that petitioner endorsed the notes of one of the principal dealers making excessive payments and paid the lot rentals of another.

The record does not establish any partnership or "joint venture" arrangement between the individual officers and the dealers. The fixed payments were to be made regardless of losses. While Harold and Eldon might have aided certain of the dealers in the preparation of ads and the making of sales, a fixed payment was made on each trailer delivered regardless of amount of services rendered, and Bertha shared in the payments although she performed no services. The conclusion is inescapable that the payments were received on sales made by petitioner and are taxable to it. *Miller-Smith Hosiery Mills*, 22 T. C. 581. In any event petitioner has failed to prove that respondent's determination was erroneous. *Reinecke* v. *Spalding*, 280 U. S. 227; *Harvey* v. *Early*, (C. A. 4) 189 F. 2d 169.

*Decision will be entered under Rule 50.*