O. H. Kruse Grain & Milling v. Commissioner.
O. H. Kruse Grain & Milling v. Commissioner
Docket No. 65683.
United States Tax Court
T.C. Memo 1959-110; 1959 Tax Ct. Memo LEXIS 140; 18 T.C.M. (CCH) 487; T.C.M. (RIA) 59110; May 26, 1959
*140 Held, that the petitioner, in giving a promissory note to its majority stockholder, did not intend to create a true indebtedness within the meaning of section 23(b) of the Internal Revenue Code of 1939 and consequently is not entitled to deductions for interest on such note for the years 1952 and 1953. Held, further, that rental payments to its majority stockholder which were accrued by petitioner on its books for the years 1952 and 1953 were includible in the gross income of the payee by application of the doctrine of constructive receipt and the claimed deductions are not barred by section 24(c), I.R.C. of 1939. LeVone A. Yardum, Esq., for the petitioner. John E. Schessler, Esq., and J. Earl Gardner, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the income tax of petitioner for the years 1952 and 1953 in the respective amounts of $13,994.26 and $19,192.33. The questions in the case are: 1. Whether an alleged promissory note issued in 1950 by petitioner to O. H. Kruse, who, with his wife jointly owned all of the petitioner's outstanding stock, was a true indebtedness so that accrued interest *141 thereon during the years 1952 and 1953 would be deductible under the provisions of section 23(b), Internal Revenue Code of 1939[1]; and 2. Whether petitioner is barred by section 24(c) from deducting accrued rental expense during the years 1952 and 1953. Findings of Fact Some of the facts were stipulated and they are found accordingly. Petitioner is a corporation organized under the laws of the State of California and it filed its corporate income tax returns for the years 1952 and 1953 with the district director of internal revenue at Los Angeles, California. O. H. Kruse, sometimes referred to in the record as Otto H. Kruse, president of petitioner corporation, had been engaged in the hay, grain and feed business for a period of 14 years prior to 1950. In April 1950 O. H. Kruse and his wife, Helen D. Kruse, formed petitioner corporation, using the name O. H. Kruse Grain & Milling as the name of the corporation, which was the same name as O. H. Kruse had used in conducting his business as a sole proprietorship. The petitioner corporation had an authorized capital stock of $300,000, consisting of 3,000 shares *142 of $100 par value each. On April 1, 1950, O. H. Kruse transferred to petitioner, in exchange for 800 shares of stock, the following property: Office equipment
$ 1,865.76
Autos and trucks
57,135.27
Machinery and equip
64,113.91
$123,114.91
Less accrued
depreciation
44,050.41
$79,064.53
Prepaid insurance
4,163.67
Insurance deposits less
accrued premiums
2,293.48
Cash
4,270.55
$89,792.23
In this transaction petitioner assumed liabilities of O. H. Kruse, as follows: Notes payable (bank)
$8,000.00
Accounts payable (trade)
1,710.00
Accrued payroll taxes
(due 12/31/50)
82.23
$9,792.23 The minutes of the meeting of June 15, 1950 of the board of directors of the petitioner corporation show the following: "Mr. Kruse then stated that he had advanced funds to the corporation for working capital, and that he would be willing to accept the corporation's promissory note for $200,000.00 payable December 31, 1950, to bear interest at the rate of 6% per annum beginning January 1, 1951, if the note should be unpaid on that date. The balance of the advance could be carried as an open account. Payments to Mr. Kruse, other than those on the promissory note, should be applied first to accrued interest, secondly to accrued rental, *143 and then to the open account." The following resolution is also contained in these minutes: "RESOLVED: That the officers of the corporation be directed to execute a promissory note in the amount of $200,000.00, payable to Mr. O. H. Kruse, payable on December 31, 1950, and to bear interest at the rate of 6% per annum if unpaid on January 1, 1951." O. H. Kruse conveyed the following assets to the petitioner corporation and accepted in payment therefor its promissory note in the principal sum of $200,000 and an open account in his favor in the amount of $18,579.29: Accounts receivable
$139,506.62
Merchandise inventory
37,724.59
Cash
41,348.08
$218,579.29 The $200,000 note was dated June 15, 1950 and it provides for the payment of the $200,000 "On or before December 31, 1950 or thereafter on demand" and it bears interest at the rate of 6 per cent "from January 1, 1951 until paid, interest payable semi-annually." Petitioner rented certain real estate consisting of mills and a small house used as an office from O. H. Kruse for $1,000 per month and continued renting this property through the year 1953. The corporate journal entry for each month of 1952 and 1953 shows a debit to "Interest" or "In *144 terest Expense" and a credit to "Accrued Interest." These monthly journal entries were posted to ledger sheets entitled "Accrued Interest." The corporate journal entry for each month for 1952 and 1953 shows a debit to "Rent" or "Rental Expense" and a credit to "Accrued Rent." These monthly journal entries were posted to ledger sheets entitled "Accrued Rent." Petitioner had a line of credit of $100,000 with the Bank of America established on November 3, 1951 and on said date O. H. Kruse and Helen D. Kruse signed a subordination agreement subordinating the $200,000 note obligation to any existing loan with the bank. In said agreement O. H. Kruse and his wife agreed not to sue, collect or receive payment upon any claim, nor interest thereon, which they held against petitioner so long as petitioner owed the bank. Petitioner corporation deducted accrued interest of $9,000 and accrued rent of $9,000, both payable to O. H. Kruse, in 1950. Petitioner corporation deducted $12,000 rent and $12,000 interest both payable to O. H. Kruse, and O. H. Kruse, who reported his income on the cash method of accounting at all times, reported $21,000 rent and no interest from petitioner corporation in 1951. *145 Nothing was paid on these items in 1951. Petitioner corporation deducted accrued rent of $12,000 and accrued interest of $12,000 both owing to O. H. Kruse in 1952. O. H. Kruse reported $12,000 rent and $6,000 interest both from petitioner in 1952. Nothing was paid on these items in 1952. Petitioner corporation deducted accrued rent of $12,000 and accrued interest of $12,000 both owing to O. H. Kruse in 1953. O. H. Kruse reported $12,000 rent and $12,000 interest, both from petitioner in 1953. Petitioner paid $2,000 interest in September 1953 and $12,000 rent in December 1953 to O. H. Kruse. Payment of the corporation's note to O. H. Kruse was made in installments as follows: November 1, 1955
$100,000
April 12, 1957
20,000
October 22, 1958
80,000
$200,000
Respondent disallowed petitioner's deductions in the amount of $12,000 for each of the years 1952 and 1953 as interest expense on the ground that no indebtedness existed within the meaning of section 23(b) of the Internal Revenue Code of 1939 and also on the ground that these amounts were not paid during the taxable years 1952 and 1953 or within 2 1/2 months following the close of the taxable years, pursuant to the provisions of section 24(c) of the Internal Revenue Code of 1939. *146 Respondent also disallowed deductions in the amount of $12,000 in each of the years 1952 and 1953 as rental expense on the ground that these amounts were not paid during the taxable years 1952 and 1953 or within 2 1/2 months following the close of the taxable years, pursuant to the provisions of section 24(c) of the Internal Revenue Code of 1939. Petitioner's note of June 15, 1950, payable to Otto H. Kruse in the sum of $200,000, was not a bona fide indebtedness of petitioner and interest accrued thereon in 1952 and 1953 was not deductible. Petitioner was not precluded by section 24(c) from deducting accrued rental expense in the sum of $12,000 for each of the years 1952 and 1953. Opinion In disallowing petitioner's deductions of interest expense in the sum of $12,000 for each of the years 1952 and 1953, respondent explained that his disallowance was based on his determination "that no indebtedness exists within the meaning of section 23(b) of the Internal Revenue Code of 1939." Since the usual presumption of correctness, inhering in respondent's determination, applies, the burden was on petitioner to establish the existence of the indebtedness to which the claimed interest expense *147 was related. Petitioner sought to sustain its burden by introducing the $200,000 note given to its president, who, with his wife jointly, held all of its stock, the minutes of the corporation, the books of the corporation which might be said to show accruals of interest on this note and $2,000 payment of such interest in 1953, and almost nothing more which would tend to substantiate the interest deduction. The significant fact is that petitioner sought to establish its burden without the testimony of O. H. Kruse and there is no explanation in the record that his testimony was unavailable. The only witness in the case was Fray L. Hobson, a certified public accountant who described himself as an assistant secretary of petitioner, but actually petitioner was merely one of the clients of his accountancy business, for whom he worked as an accountant about three days a month. The record in this case shows that in 1950 O. H. Kruse, desiring to incorporate his grain and milling business that he had operated for 14 years as a sole proprietorship, formed a corporation with the same name as his sole proprietorship business, to which corporation he first transferred part of his business assets *148 and received payment therefor in the form of 800 shares of stock, and to which he later transferred other business assets such as accounts receivable, stock of merchandise, and some cash in the sum of $41,348.08 and received in payment therefor the corporation's note in the sum of $200,000 and an $18,579.29 open account in his favor. The 800 shares of stock, which were issued to O. H. Kruse and his wife jointly, were all of the issued shares and O. H. Kruse became the president of the corporation and in complete control at the time the $200,000 note was issued by the corporation to him. The question is whether the $200,000 note did, in reality, represent a bona fide indebtedness of the corporation or whether it was a contribution to capital. There have been many cases involving the issue of whether the principal stockholder of a closely held corporation succeeded in establishing a creditor-debtor relationship between himself and the corporation. See Gooding Amusement Co., 23 T.C. 408, and the affirming opinion in Gooding Amusement Co. v. Commissioner, 236 Fed. (2d) 159, where many cases involving this issue are cited and reviewed. The issue is essentially one of fact ( Tribune Publishing Co., 17 T.C. 1228) *149 and it is to be decided upon the facts and circumstances of the particular case ( Charles L. Huisking & Co., 4 T.C. 595. Various factors and combination of factors have been relied upon in the decided cases as a basis for the determination of the issue. The inquiry is not limited to the instruments, and it has been said the real intent of the parties is the decisive factor. Gooding Amusement Co., supra; Proctor Shop, Inc., 30 B.T.A. 721. One of the factors is the presence or absence of a fixed maturity date for the instrument, Mullin Building Corporation, 9 T.C. 350. Here the $200,000 note dated June 15, 1950 and executed by O. H. Kruse as president of the corporation in favor of himself was on the usual printed note form but in the written part it provided for payment "On or before December 31, 1950 or thereafter on demand." It appears to be a demand note with no right to make demand for about the first six months and the right to fix the maturity date by demand after December 31, 1950, given to the payee. We need not say that all cases a demand note given to a stockholder would not evidence an indebtedness, but we think it can be said here as was said of the obligation in Gooding Amusement Co., supra: *150 "The husband held the majority stock in the corporation. It is, in our opinion, unreasonable to ascribe to the husband petitioner, F. E. Gooding, an intention at the time of the issuance of the notes ever to enforce payment of his notes, especially if to do so would either impair the credit rating of the corporation, [n5] cause it to borrow from other sources the funds necessary to meet the payments, or bring about its dissolution. * * *" [Footnote omitted.] This points up the failure of O. H. Kruse to testify, for the unexplained terms of the note instrument leaves a permissible inference that O. H. Kruse, at the time he had his corporation issue the note to him, did not intend to enforce payment by his corporation if by so doing his corporation would be all inconvenienced. This inference is somewhat strengthened by the subordination agreement executed by O. H. Kruse and his wife in November 1951 with the Bank of America at the time the corporation established a $100,000 line of credit with the bank. The said agreement subordinated the corporation's obligation on the note to the corporation's indebtedness to the bank and O. H. Kruse therein promised to do nothing toward collection *151 or enforcement of the obligation of the note "nor interest thereon" as long as the corporation was indebted to the bank. It is also of interest to note the treatment accorded the obligation of the note and especially the interest obligation by O. H. Kruse and also by the corporation. In 1950 the corporation accrued $9,000 interest on this note obligation and took a deduction therefor although the note by its terms did not provide for any interest until January 1, 1951. Hobson, who either kept the books or supervised the bookkeeping, and who made out the corporation's return merely stated this was a mistake: "When the 1950 return was reviewed, that error was corrected." Hobson also said he made out Kruse's 1950 income tax return but for some reason neither the original nor copy of this return was made available so we do not know how O. H. Kruse treated the $9,000 interest item in that return. We do know that in 1951 the corporation accrued $12,000 interest on the note and took deduction therefor on the return prepared by Hobson, and O. H. Kruse in his return for that year reported the receipt of no interest. Hobson testified he made out Kruse's return and this was another "mistake". *152 His name does not appear on this return as the person who prepared it. Again in 1952 the corporation accrued $12,000 interest on the note and took deduction therefor in the 1952 return made out by Hobson. In O. H. Kruse's return for that year he only reported receipt of $6,000 interest on the note. Again Hobson states this was a mistake. This return bears Hobson's signature as the person who prepared it but underneath there is typed: "Prepared from data submitted by taxpayer." In the 1953 return of the corporation and O. H. Kruse, both prepared by Hobson, there is the deduction of $12,000 interest on the corporation return and the report of receipt of $12,000 interest on the O. H. Kruse return. There is some question as to the sufficiency of the book entries to show interest accruals but we will assume Hobson, the certified public accountant, was at least correct, since 1951, in showing the interest accruals. It is no explanation for Kruse's and the corporation's accountant merely to say there were "mistakes" in the books and corporation income tax return for 1950, and in Kruse's income tax returns for the years 1950, 1951 and 1952. All of these so-called mistakes relate directly *153 to the alleged interest obligation which was the subject of deduction by the corporation in the years in question. It is obvious the treatment of the interest obligation in these early years must be termed a mistake if petitioner is to argue the note presents an unconditional and legally enforceable obligation for the payment of $200,000. But this treatment of the interest obligation, standing unexplained by O. H. Kruse, is some evidence that casts doubt as to there being an intention to issue a legally enforceable obligation. There are other bits of evidence that also cast doubt upon there being an intention to create a real debt when O. H. Kruse caused the corporation he controlled to issue the note to him. The note was unsecured. Although the corporation paid its obligations, other than this note, promptly, it made no payment on the principal on this note until November 1955, which was after the issue as to whether this was a true corporate obligation had been raised by the revenue agent. Upon the whole record we hold petitioner failed to sustain its burden of proving the existence of an indebtedness to which the interest expense related. Respondent makes an alternative argument *154 with respect to the interest deductions for 1952 and 1953 to the effect that the corporation is barred by section 24(c) from deducting interest it accrued which was not actually paid to or includible in the gross income of O. H. Kruse within the taxable year that the deduction was taken or 2 1/2 months following the close thereof. Because of our holding that the interest deductions were properly disallowed because no genuine indebtedness existed, we need not consider this portion of respondent's argument. But respondent makes a similar argument based on his determination with respect to $12,000 rental deduction petitioner took in 1952 and the $12,000 rental deduction petitioner took in 1953, which deduction respondent also disallowed. The minutes of the corporation show the rental by the corporation, on a year to year basis, of all of the real property it occupied, which was owned by O. H. Kruse, consisting of two mills and a small house used for an office at a rental of $1,000 a month. No question is raised as to the amount of the rental being reasonable and the corporation accrued the $1,000 rental item each month. The rent of $12,000 for 1952 was not actually paid in that year to *155 O. H. Kruse nor was it paid to him within 2 1/2 months thereafter. The books of the corporation show the issuance of a check to O. H. Kruse dated December 15, 1953 in the sum of $12,000 which Hobson identifies as being for rent. Respondent does not seem to question this evidence as being sufficient to establish petitioner's payment of the $12,000 rent deducted in its 1953 return. The question is whether the evidence is sufficient to show constructive receipt by O. H. Kruse of as much rent as the corporation deducted for the year 1952. Petitioner argues the $12,000 yearly rental during the years involved was "constructively received" by O. H. Kruse - that under the doctrine of constructive receipt the $12,000 rental was includible in the gross income of O. H. Kruse. The record shows that O. H. Kruse did include the $12,000 rental as income in his return for all of the years, including the years in question. In his return for 1951 O. H. Kruse reported $21,000 rental income from the corporation for this property which Hobson explains as another one of his "mistakes." The issue turns upon whether the rental income was set apart or credited to O. H. Kruse so that it could be drawn upon *156 by him without any substantial limitation. Geiger & Peters, Inc., 27 T.C. 911. The record is not too clear but the journal entry each month shows a debit to "Rent" or "Rental Expense" and credit to "Accrued Rent." These journal entries were posted in the ledger sheets of the corporation entitled "Accrued Rent." Hobson, who set up the books, testified he did not think it necessary that the accrued rent account be further identified in the books as an obligation owed to O. H. Kruse because this was the property the corporation occupied, and it was identified in the minutes as being Kruse's property that the corporation was renting and it was the only property it rented and he and O. H. Kruse knew exactly to whom the rental account was owed. It is true that there is not the same need for a multiplicity of accounts or identity of accounts in a small wholly owned corporation, such as would be required completely to inform officers, directors, and stockholders of a corporation with many stockholders. It fairly appears from the books that the rent accrued during the the years in question was the rent due to O. H. Kruse of $1,000 a month for the property petitioner occupied. We also hold *157 this rent was constructively received by O. H. Kruse in 1952. When we treat the accrued rent account in the ledger as being an accrued obligation owing to O. H. Kruse, who was, in effect, in sole control of the corporation, it must be admitted the accruals were subject to his "unqualified demand." Platt Trailer Co., 23 T.C. 1065. Without delving deeply into the corporate finances, it is clear the corporation could have paid the rental obligation in 1952, either out of cash, or from borrowing on its unused line of credit in the Bank of America, or by a secured loan pledging some $300,000 in accounts receivable. We have earlier held the rental for 1953 was paid. We hold petitioner was entitled to the rental deductions in the sum of $12,000 for each of the years 1952 and 1953. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩